MATTHEW D. CHURCH #15574
KENDRA M. BROWN #16409
**MANNING CURTIS BRADSHAW**
**& BEDNAR PLLC**
201 South Main Street, Suite 750
Salt Lake City, Utah 84111
(801) 363-5678
mchurch@mc2b.com; kbrown@mc2b.com
*Attorneys for James Ortler*

IN THE UNITED STATES DISTRICT COURT,
DISTRICT OF UTAH, SOUTHERN DIVISION

| | |
|---|---|
| STATE AUTO PROPERTY & CASUALTY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> JAMES ORTLER, APRIL FISCHER, MILLINDA JOHNSON, AIMEE JOHNSON, and SARAH BARLOW, <br><br> Defendants. | **JAMES ORTLER'S OPPOSITION TO STATE AUTO'S MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> Case No. 4:24-cv-00023-DN-PK <br><br> Judge David Nuffer <br> Magistrate Judge Paul Kohler |

Defendant James Ortler, by and through counsel of record, hereby submits this Opposition to State Auto's Motion for Judgment on the Pleadings.

## **INTRODUCTION**

State Auto is asking this Court to determine that it has no obligation to defend or indemnify Mr. Ortler, its insured, against the allegations brought against him by April Fischer, Millinda Johnson, Aimee Johnson, and Sarah Barlow ("Plaintiffs"). In their complaint ("Underlying Complaint"), Plaintiffs alleged multiple instances of intentional and negligent conduct in support of their claims for intentional torts and for negligence. Mr. Ortler has unquestionably denied throughout the underlying lawsuit that he did not engage in any of the

conduct alleged—either intentionally or negligently. In the present action, State Auto is itself deciding that Mr. Ortler's conduct *was intentional*. Neither the Plaintiffs, let alone a jury, has made such a conclusive decision. Yet, State Auto is adamant that Mr. Ortler engaged in only intentional conduct so that State Auto can be relieved of its obligation to defend and indemnify Mr. Ortler. State Auto has therefore forced Mr. Ortler to defend himself against the Underlying Complaint and against his own insurance company, which is intended to defend him. State Auto cannot make its own decision with respect to liability prior to any decision in the underlying action.

As explained below, this premature Motion for Judgment on the Pleadings should be dismissed because Utah law, the insurance policies, and that Underlying Complaint require coverage for Mr. Ortler against the Plaintiffs' allegations.

## RELIEF REQUESTED AND GROUNDS THEREFOR

Mr. Ortler respectfully requests the Court deny State Auto's request for a judgment and order stating that it is not obligated to defend or indemnify him against the claims raised in the Underlying Complaint. Utah law, as well as the plain language of the Insurance Policies[1] and the Underlying Complaint, dictate that State Auto is required to defend and indemnify Mr. Ortler.

In Utah, the insurer has a duty to defend and a duty to indemnify, which are two distinct duties. The duty to defend is triggered when the insured tenders a defense of an action that "is potentially within the policy coverage." *Summerhaze Co., L.C. v. Federal Deposit Ins. Corp.*, 2014 UT 28, ¶ 38, 332 P.3d 908. And, under clearly established Utah law, an insurer is obligated

---

[1] There are three insurance policies at issue in this case, one for 2019, 2020, and 2021. All of the relevant language in the three insurance policies is identical.

to defends its insured against *all claims* brought against him when at least one claim is covered by the insurance policy. *See Benjamin v. Amica Mut. Ins. Co.*, 2006 UT 37, ¶ 25. When determining whether an insurer has a duty to defend, the Court focuses on *only* two documents: the insurance policy and the complaint. All that is necessary to invoke coverage is whether the complaint alleges a risk within the coverage of the policy. Here, the Insurance Policies provide that State Auto will defend and indemnify Mr. Ortler for "bodily injury" that is "caused by an occurrence'"—i.e., accidental, unintentional, or negligent conduct. Plaintiffs have alleged that Mr. Ortler engaged in negligent and unintentional conduct that led to bodily harm and emotional distress. Plaintiffs have also specifically raised a claim for unintentional infliction of emotional distress. Accordingly, State Auto has a duty to defend Mr. Ortler against all claims raised against him.

In an effort to overcome this clearly established case law—which State Auto has also ignored and failed to address—State Auto attempts to create ambiguity in the meaning of the terms of the Insurance Policies and the allegations of the Complaint. But any ambiguity in the terms of the Insurance Policies or the Underlying Complaint is construed in favor of coverage for Mr. Ortler and against State Auto. *See, e.g.*, *Fuller v. Director of Finance*, 649 P.2d 1045, 1046–47 (Utah 1985) ("In interpreting insurance policies, we have held that ambiguities are to be construed against the insurer…").

Finally, State Auto relies solely on its arguments that it also has absolutely no duty to defend Mr. Ortler against any claim to argue that it has no duty to indemnify Mr. Ortler. But, as established below, State Auto does have a duty to defend Mr. Ortler against all claims and therefore has not shown that there is no duty to indemnify.

Accordingly, Mr. Ortler respectfully requests that the Court deny State Auto's Motion for Judgment on the Pleadings and instead enter an Order granting Mr. Ortler's Motion to Stay Proceedings Pending the Underlying Litigation. (ECF 50.)

## BACKGROUND

## STATEMENT OF FACTS

1.      State Auto claims that it has no duty to defend Mr. Ortler against the claims raised by Plaintiffs in the Underlying Complaint. ECF 43.

2.      State Auto claims that the Underlying Complaint does not include any claim that triggers coverage. ECF 43.

3.      The Insurance Policies provide coverage for bodily injury that arises out of negligent conduct.

4.      The Insurance Policies contains the following insuring language with regard to personal liability coverage:

**SECTION I – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1. Insuring Agreement**
        a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies …
        b. This insurance applies to "bodily injury" and "property damage" only if:
            1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory[.]"

Ex. B, 2019 Policy, SA_000008; Ex. C, 2020 Policy, SA_000031; Ex. D, 2021 Policy, SA_000054.

5.     The Insurance Policies likewise contains the following definitions relevant to personal liability coverage:

### SECTION V – DEFINITIONS

…

**3.**     "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

…

**13.**     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Ex. B, 2019 Policy, SA_000019–20; Ex. C, 2020 Policy, SA_000042–43; Ex. D, 2021 Policy, SA_000065–66.

6.     The Insurance Policies also contains the following exclusions:

### SECTION I – COVERAGES
### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

…

**1. Exclusions**
This insurance does not apply to:
**a.     Expected Or Intended Injury**
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Ex. B, 2019 Policy, SA_000008-9; Ex. C, 2020 Policy, SA_000031-32; Ex. D, 2021 Policy. SA_000054-55.

7.     Plaintiffs have alleged in the Underlying Complaint as followed:

91.     April has been emotionally and physically devastated by the actions of Ortler, Winters and the Association as alleged herein—suffering deep scars, withdrawing from her educational classes, avoiding any dating relationship, and struggling to stay at her Copper Chase condominium.

…

155.     Alternately, Ortler negligently put April in imminent apprehension of harmful and offensive sexual contact, negligently caused a harmful, offensive and painful sexual battery on April, and the apprehension and subsequent harmful, offensive and painful sexual battery caused her pain and injury.

156.     As a direct and proximate result of the foregoing wrongful conduct, April has suffered severe pain, emotional distress and permanent injury, all to her general damage in a reasonable sum.

157.     As a further direct and proximate result of the foregoing wrongful conduct, April has incurred and will yet incur medical and therapy expenses, all to her special damage in a reasonable sum.

158.     As a further direct and proximate result of the foregoing wrongful conduct, April has incurred and will yet incur lost wages, all to her special damage in a reasonable sum.

159.     As a further direct and proximate result of the foregoing wrongful conduct, Aprils has suffered lost earning capacity, all to her special damage in a reasonable sum.

…

163.     Alternately, Ortler negligently put Millinda in imminent apprehension of harmful and offensive sexual contact by which he caused her to remain in a painful state of immediate apprehension and fear of sexual contact throughout the night.

164.     As a direct and proximate result of the foregoing wrongful conduct, Millinda has suffered severe pain, emotional distress and permanent injury, all to her damage in a reasonable sum.

…

198.     In the alternative, Ortler's, Winter's and the Association's conduct, as alleged herein, unintentionally caused April, Millinda, Sarah, Aimee, William, Amalia, and Maron to sustain severe emotional distress, characterized by illness or bodily harm.

199.     April, Millinda, Sarah, Aimee, William, Amalia, and Amaron suffered severe or extreme emotional distress characterized by illness or bodily harm that was caused by Ortler's and the Association's conduct.

200.     As a direct and proximate result of the foregoing wrongful conduct, April, Millinda, Sarah, Aimee, William, Amalia, and Amaron have suffered severe pain, emotional distress and permanent injury, all to their general damage in reasonable sums.

Ex. A., Underlying Compl. ¶¶ 91, 156–59, 163–64, 198–200.

8.      Throughout the Underlying Complaint, the Plaintiffs alleged negligent and unintentional conduct, incorporated all preceding paragraphs by reference in each cause of action, and alleged that the conduct led to bodily injury and emotional distress.

9.      Plaintiffs have clearly and unambiguously raised an alternative claim for unintentional infliction of emotional distress, and clearly and unambiguously alleged negligent conduct resulting in bodily harm and emotional distress, which is expressly covered under the Insurance Policies. *See supra* Facts ¶¶ 4–5.

## ARGUMENT

## I.      STATE AUTO'S ARGUMENTS FAIL AS A MATTER OF LAW.

### A.      Utah Law Requires State Auto To Provide Coverage For The Claims Alleged Against Mr. Ortler.

State Auto has a duty to defend Mr. Ortler against all claims raised against him in the Underlying Complaint because the Plaintiffs have alleged a claim for "unintentional" or "negligent" infliction of emotional distress. Because the Insurance Policies do not include exclusions for unintentional or negligent conduct, Utah law requires State Auto to defend Mr. Ortler against all claims for intentional and unintentional conduct.

In Utah, "the insurer has two duties," the "duty to indemnify" and the "duty to defend." *Summerhaze Co., L.C. v. Federal Deposit Ins. Corp.*, 2014 UT 28, ¶ 36, 332 P.3d 908; *see also Sharon Steel Corp. v. Aetna Cas. & Sur. Co.*, 931 P.2d 127, 133 (Utah 1997) (same); *Deseret Fed. Sav. & Loan Ass'n v. U.S. Fidelity & Guar. Co.*, 714 P.2d 1143, 1146 (Utah 1986) (same). "These are two distinct duties, with 'an insurer's duty to defend [being] broader than its duty to indemnify.'" *Summerhaze Co.*, 2014 UT 28, ¶ 36 (quoting *Sharon Steel Corp.* 931 P.2d at 133).

7

The "duty to defend [is] controlled by the allegations in the complaint against the insured." *Id.* (quoting *Fire Ins. Exchange v. Estate of Therkelsen*, 2001 UT 48, ¶ 23, 27 P.3d 555). "The duty to defend is a continuing duty that is triggered when the insured tenders the defense of an action against it which is potentially within the policy coverage." *Id.* (cleaned up) (emphasis added). "Where factual questions render coverage uncertain … the insurer must defend until those uncertainties can be resolved against coverage." *Benjamin v. Amica Mut. Ins. Co.*, 2006 UT 37, ¶ 22, 140 P.3d 1210. Further, "**an insurer may have a duty to defend an insured even if … the insurer is ultimately not liable to indemnify the insured**." *Fire Ins. Exch.*, 2001 UT 48, ¶ 22. On the other hand, the duty to indemnify is "determined by the underlying facts of the case." *Id.* ¶ 23.

When engaging in the "duty-to-defend analysis, [courts] focus on two documents: the insurance policy and the complaint." *Benjamin v. Amica Mut. Ins. Co.*, 2006 UT 37, ¶ 16, 140 P.3d 1210. "An insurer's duty to defend is determined by comparing the language of the insurance policy within the allegations of the complaint." *Fire Ins. Exch. v. Estate of Therkelsen*, 2001 UT 48, ¶ 21, 27 P.3d 555 (cleaned up). The test, therefore, is "whether the [underlying] complaint alleges a risk within the coverage of the policy." *Benjamin*, 2006 UT 37, ¶ 16.

**Where the "insurance policy obligates an insurer to defend claims of unintentional injury, the insurer is obligated to do so until those claims are either dismissed or otherwise resolved in a manner inconsistent with coverage**." *Id.* ¶ 24. "Even where the complaint details egregious, intentional conduct, an expected injury exclusion … does not relieve an insurer of its duty to defend claims of unintentional injury." *Id.* "Inferences and assumptions about an insured's intent to injure are improper and inconsistent both with the well-accepted practice of

alternative pleading and with [the Utah Supreme Court's] repeated instruction that 'insurance policies should be construed liberally in favor of the insured and their beneficiaries so as to promote and not defeat the purpose of insurance.'" *Id.* (quoting *United States Fidelity & Guar. Co. v. Sandt*, 854 P.2d 519, 521 (Utah 1993); *see also Farmers Ins. Exch. v. Versaw*, 2004 UT 73, ¶ 24, 99 P.3d 796. When an insurer owes a duty to defend negligence claims, the insurer owes a duty to defend all of the claims brought by the underlying plaintiffs. *Benjamin*, 2006 UT 37, ¶ 25 ("Because Amica owed a duty to defend the negligent infliction of emotional distress claims, Amica owed a duty to defend *all* of the claims brought by Borthick and Allen." (emphasis in original)).

Throughout its argument, State Auto argues that there is ambiguity in the language of the Insurance Policies and in the Underlying Complaint. State Auto also relies on Utah case law to help interpret the Policies' definitions and to show that the inferences it is asking the Court to make with respect to the allegations in the Underlying Complaint can be reasonable inferences. ECF 43 at 11–14. It's reliance on these assertions weighs in favor of coverage. **Any ambiguity is construed in favor of coverage for the insured, Mr. Ortler, and against the insurer, State Auto.** *See See, e.g.*, *Fuller v. Director of Finance*, 649 P.2d 1045, 1046–47 (Utah 1985) ("In interpreting insurance policies, we have held that ambiguities are to be construed against the insurer…"); *Utah Farm Bureau Mut. Ins. Co. v. Orville Andrews & Sons*, 665 P.2d 1308, 1309 (Utah 1983) (explaining that "where the policy is ambiguous, doubt is resolved in favor of coverage" and that "[s]ince a policy is drawn by the insurer, ambiguities are construed against the insurer"); *see also e.g., Columbia Cas. Co. v. SMI Liquidating, Inc.*, 909 F.Supp.2d 1303, 1315 (D. Utah 2012) ("Utah courts have long subscribed to the view that any ambiguity or

uncertainty in the language of an insurance policy must be resolved in favor of coverage. Similarly, because the policy is drawn by the insurer, ambiguities are construed against that party.").

Under this well-established framework, State Auto is obligated to defend Mr. Ortler against all claims in the Underlying Lawsuit because at least one of the claims raised—unintentional infliction of emotional distress—is covered by the Insurance Policies.

**B.    The Alleged Negligent Conduct And Claim for Unintentional Infliction of Emotional Distress Is Covered By The Insurance Policies.**

Under the Insurance Policies, State Auto "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' … to which the policy applies" if the "'bodily' injury' or 'property damage' is caused by an 'occurrence.'" Ex. B, SA_000008; Ex. C, SA_000031; Ex. D, SA_000054. The Insurance Policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Ex. B, SA_0000019; Ex. C, SA_000042; Ex. D, SA_000065. And an "occurrence" means "an accident including continuous or repeated exposure to substantially the same general harmful conditions." Ex. B, SA_0000023; Ex. C, SA_000046; Ex. D, SA_000069.

In the Underlying Complaint, the Plaintiffs have alleged multiple instances of negligent—i.e., accidental or unintentional—conduct resulting in bodily injury and emotional distress:

> 91.    April has been emotionally and physically devastated by the actions of Ortler, Winters and the Association as alleged herein—suffering deep scars, withdrawing from her educational classes, avoiding any dating relationship, and struggling to stay at her Copper Chase condominium.
>
> …

155.     Alternately, Ortler negligently put April in imminent apprehension of harmful and offensive sexual contact, negligently caused a harmful, offensive and painful sexual batter on April, and the apprehension and subsequent harmful, offensive and painful sexual battery caused her pain and injury.

156.     As a direct and proximate result of the foregoing wrongful conduct, April has suffered severe pain, emotional distress and permanent injury, all to her general damage in a reasonable sum.

157.     As a further direct and proximate result of the foregoing wrongful conduct, April has incurred and will yet incur medical and therapy expenses, all to her special damage in a reasonable sum.

158.     As a further direct and proximate result of the foregoing wrongful conduct, April has incurred and will yet incur lost wages, all to her special damage in a reasonable sum.

159.     As a further direct and proximate result of the foregoing wrongful conduct, Aprils has suffered lost earning capacity, all to her special damage in a reasonable sum.

…

163.     Alternately, Ortler negligently put Millinda in imminent apprehension of harmful and offensive sexual contact by which he caused her to remain in a painful state of immediate apprehension and fear of sexual contact throughout the night.

164.     As a direct and proximate result of the foregoing wrongful conduct, Millinda has suffered severe pain, emotional distress and permanent injury, all to her damage in a reasonable sum.

…

198.     In the alternative, Ortler's, Winter's and the Association's conduct, as alleged herein, unintentionally caused April, Millinda, Sarah, Aimee, William, Amalia, and Maron to sustain severe emotional distress, characterized by illness or bodily harm.

199.     April, Millinda, Sarah, Aimee, William, Amalia, and Amaron suffered severe or extreme emotional distress characterized by illness or bodily harm that was caused by Ortler's and the Association's conduct.

200.     As a direct and proximate result of the foregoing wrongful conduct, April, Millinda, Sarah, Aimee, William, Amalia, and Amaron have suffered severe pain, emotional distress and permanent injury, all to their general damage in reasonable sums.

Ex. A., Underlying Compl. ¶¶ 91, 156–59, 163–64, 198–200.

Plaintiffs expressly alleged negligent and intentional conduct throughout the Underlying Complaint. Based on the plain language of the Complaint and the Insurance Policies, Plaintiffs raised claims and allegations against Mr. Ortler that are clearly covered claims.

To further illustrate the point that Utah law and the Insurance Policies require coverage in this case, the facts of *Benjamin* are nearly identical to the present lawsuit, and the Utah Supreme Court determined in *Benjamin* that the sexual assault and negligent infliction of emotional distress claims were covered by nearly identical policy language to the Insurance Policies. In *Benjamin*, the insured was accused of sexual assault and rape against Jeanette Borthick and Angela Allen. 2006 UT 37, ¶¶ 2–4. "Both Borthick and Allen, coworkers of Benjamin, … asserted identical causes of action for (1) assault, (2), battery, (3) intentional infliction of emotional distress, (4) negligent infliction of emotional distress, (5) false imprisonment, and (6) invasion of privacy." *Id.* ¶ 3. Benjamin tendered the claim to his homeowners insurance ("Amica") and received coverage under a reservation of rights. *Id.* ¶¶ 5–6. A jury "rejected all of Borthick's intentional tort claims and found Benjamin liable only for negligent infliction of emotional distress." *Id.* ¶ 7. "After the Borthick trial, Benjamin entered into settlement negotiations with both Borthick and Allen. Benjamin notified Amica of the negotiations and asked Amica to participate, but Amica refused." *Id.* ¶ 8. Following a settlement, Amica also refused to indemnify Benjamin. *Id.* Benjamin sued Amica, "alleging three causes of action: (1) breach of the express terms of his insurance contracts, (2) breach of implied covenants of good faith and fair dealing, and (3) breach of fiduciary duties." *Id.* ¶ 9. Both parties moved for partial summary judgment. *Id.* "The district court ultimately granted Benjamin's motion for partial

summary judgment, ruling that the claims for negligent infliction of emotional distress, false imprisonment, and invasion of privacy, were covered by 'Amica's insurance policies.'" *Id.* ¶ 10. The district court further concluded that the policies were ambiguous, that "ambiguities should be construed in favor of coverage," and that Amica "breached the terms of the policies by discontinuing defense" and "failing to indemnify Benjamin" for the settlement amount. *Id.*

The Utah Supreme Court affirmed, on slightly different grounds, and concluded that the insurance policy "imposed upon Amica a duty to indemnify Benjamin with respect to the negligent infliction of emotional distress claims" and that the excess policy "provide[d] coverage for two of the intentional torts alleged by Borthick and Allen." *Id.* ¶ 13. The Supreme Court only disagreed that the policies were ambiguous, yet still found coverage in favor of Benjamin. *Id.* The Utah Supreme Court looked to the relevant policy language, which included a "duty to defend" where "a claim is made or a suit is brought against an insured for damages because of *bodily injury* … caused by an occurrence to which coverage applies." *Id.* ¶ 17 (cleaned up). The policy defined "occurrence" as "'an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in … bodily injury." *Id.* (cleaned up) The policy "specifically excludes from coverage 'bodily injury … which is expected or intended by the insured.'" *Id.* (cleaned up). Amica relied on the "expected or intended" exclusion under the insurance policy, arguing that the "negligence claims are merely 'creatively-labeled causes of action intended to trigger insurance coverage." *Id.* ¶ 19 (cleaned up). The Supreme Court disagreed, explaining that "[t]he crux of a claim for negligent infliction of emotional distress is unintentional injury." *Id.* ¶¶ 19–20. Although "Borthick and Allen alleged that Benjamin committed intentional sexual assaults, that does not preclude them

from pleading alternative causes of action," such as negligent infliction of emotional distress. *Id.* ¶ 20. "**Because Borthick and Allen alleged that Benjamin negligently and unintentionally inflicted emotional distress upon them, Amica had a duty to defend Benjamin until it could establish that those claims were not supported by the facts**." *Id.* ¶ 22 (emphasis added). "Where factual questions render coverage uncertain, as is the case here, the insurer must defend until those uncertainties can be resolved against coverage." *Id.* The Utah Supreme Court therefore held that "[b]ecause Amica owed a duty to defend the negligent infliction of emotional distress claims, Amica owed a duty to defend *all* of the claims brought by Borthick and Allen." *Id.* ¶ 25 (emphasis in original).

The conduct alleged and the claims raised by Borthick and Allen against Benjamin are nearly identical to the claims raised by Plaintiffs against Mr. Ortler. Plaintiffs alleged claims of sexual assault and alleged a claim for unintentional infliction of emotional distress. The Insurance Policies include a duty to defend against bodily injury caused by an occurrence, which is "an accident including continuous or repeated exposure to substantially the same general harmful conditions." Ex. X, SA_0000023; Ex. X, SA_000046; Ex. X, SA_000069; *compare with Benjamin*, 2006 UT 37, ¶ 17 (providing that the insurance policy "defines 'occurrence' as "*an accident, including continuous or repeated exposure to substantially the same general harmful conditions*, which results, during the policy period, in... [b]odily injury"). And "bodily injury" means "bodily injury, or sickness or disease sustained by a person." Ex. X, SA_0000019; Ex. X, SA_000042; Ex. X, SA_000065. As with *Benjamin*, the Insurance Policies include an exclusion for "Expected or Intended Injury." Ex. X, SA_000008–09; Ex. X, SA_000031–32; Ex. X, SA_000054–55; *compare with Benjamin*, 2006 UT 37, ¶ 17 (explaining that the homeowners

insurance policy "specifically excludes from coverage 'bodily injury... [w]hich is expected or intended by the insured.'"). The claims at issue and the policy language at issue in this case is no different than in *Benjamin*. Therefore, the *Benjamin* decision squarely applies.

Merely because Plaintiffs alleged claims for intentional torts, including sexual assault, "that does not preclude them from pleading alternative causes of action," such as negligent infliction of emotional distress. *Benjamin*, 2006 UT 37, ¶ 20. Because the Utah Supreme Court has expressly held that where an insurance carrier "owe[s] a duty to defend the negligent infliction of emotional distress claims, [the carrier] owe[s] a duty to defend *all* of the claims." *Id.* ¶ 25. State Auto has a clear duty to defend Mr. Ortler against all claims. Mr. Ortler therefore respectfully requests the Court deny the Motion for Judgment on the Pleadings.

1.    The Underlying Complaint Alleges An "Occurrence" as Defined By The Insurance Policies.

In an attempt to overcome the clearly established Utah case law, State Auto argues that the Underlying Complaint does not allege an "occurrence" under the Insurance Policies. ECF 43 at 10–13. Based on the plain language of the Insurance Policies and the Underlying Complaint, this argument is objectively untrue.

State Auto argues that because the allegations against Mr. Ortler are for intentional torts, the Court can *infer intent* to inflict emotional distress even under the alternative ground for *unintentional* infliction of emotional distress. As explained above, the Court must look to only the allegations in the Complaint and the Insurance Policies language without additional interpretation or inference to determine whether Plaintiffs alleged covered claims. *See Benjamin*, 2006 UT 37, ¶ 16; *Fire Ins. Exch. v. Estate of Therkelsen*, 2001 UT 48, ¶ 21, 27 P.3d 555. It is entirely irrelevant that State Auto believes that the Plaintiffs meant something different by their

15

allegations than what is clearly pled in the Underlying Complaint. The Court should not entertain State Auto's invitation to step outside the role of reviewing only the plain language of the Underlying Complaint and replace the factual allegations with its own interpretation of what those factual allegations mean. The only question regarding defense coverage is whether the Underlying Complaint alleged facts covered by the Insurance Policies. It clearly does. *See supra* SOF ¶ 7; *supra* Section I.B.

Further, even if the Court were to accept State Auto's invitation, State Auto's argument that "the *substance* of the Plaintiffs cause of action for infliction of emotion distress is that Ortler stalked, harassed, retaliated, and intimidated them, which was done 'with the intention of intimidating [Underlying Plaintiff Fischer] into dropping the rape charges'" and therefore no occurrence occurred is similarly erroneous under Utah law. In *Bennett v. Jones, Waldo, Holbrook & McDonough*, 2003 UT 9, the Utah Supreme Court explained that intimidating someone or acting in a way to get a person to act is not the same as intending to cause emotional distress. *Id.* ¶ 68. "Bennett's claim for intentional infliction of emotional distress was properly dismissed because Bennett alleged that the Jones Waldo defendants' purportedly outrageous conduct was actually committed *not* for the purpose of inflicting emotional distress on Bennett but instead to intimidate and deter him from instigating this action in Utah." *Id.* Just like *Bennett*, the allegations of stalking, harassment, intimidation, and retaliation in the Underlying Complaint were alleged to show Mr. Ortler's intent to get Ms. Fischer to "drop[] the rape charges," EX. X, Compl. ¶¶ 65–66, rather than "for the purpose of inflicting emotional distress." 2003 UT 9, ¶ 68. Accordingly, State Auto cannot show that the Underlying Complaint failed to plead an occurrence.

Based on the clear and plain language of the Underlying Complaint and the Insurance Policies, Utah law requires State Auto to defend Mr. Ortler in the Underlying Lawsuit. Accordingly, Mr. Ortler respectfully requests that the Court deny State Auto's Motion for Judgment on the Pleadings.

2.  State Auto's Ambiguity Arguments Weigh In Favor Of Coverage and Are Otherwise Erroneous.

As explained above, State Auto's attempts to create ambiguity in the plain language of the Underlying Complaint and Insurance Policies weighs in favor of coverage. But even if the Court were to entertain State Auto's ambiguity arguments, the case law relied on by State Auto does not support its arguments.

First, in support of State Auto's argument that emotional distress cannot be encompassed in the term "bodily injury" under the Insurance Policies, State Auto relies on case law that addresses loss of consortium claims. ECF 43 at 13-14. Loss of consortium is a distinct injury from emotional distress. State Auto in no way addresses the Insurance Policies broad definition of "bodily injury" to include "*bodily injury*, *sickness or disease* sustained by a person." The Insurance Policies do not further define "bodily injury," "sickness," or "disease." Therefore, the ambiguity, if any, in these definitions must be read in favor of coverage for emotional distress claims. *See, e.g.*, *Fuller v. Director of Finance*, 649 P.2d 1045, 1046–47 (Utah 1985) *Utah Farm Bureau Mut. Ins. Co. v. Orville Andrews & Sons*, 665 P.2d 1308, 1309 (Utah 1983); *Columbia Cas. Co. v. SMI Liquidating, Inc.*, 909 F.Supp.2d 1303, 1315 (D. Utah 2012). Relatedly, to the extent State Auto is stating that the plain language of the Insurance Policies' definition of "occurrence" is ambiguous, Utah law requires that those ambiguities be construed in favor of the insured and against the insurer.

Second, to the extent State Auto argues that "accident"—as the term is used in the definition of "occurrence" in the Insurance Policies—cannot include the unintentional infliction of emotional distress alleged in the Underlying Complaint, that argument is clearly erroneous under the case cited by State Auto. In *N.M. ex. rel. Caleb v. Daniel E.*, 2008 UT 1, 175 P.3d 566, the court explained: "The word accident is descriptive of means which produce effects which are not their natural and probable consequences.... The probable consequence of the use of given means is the consequence which is more likely to follow from their use than it is to fail to follow. … It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds." *Id.* ¶ 6 (cleaned up). As explained above, State Auto has failed to grapple with the fact that the Underlying Complaint's allegations of "stalking, harassment, intimidation, and retaliation," were intended to get Ms. Fischer to "drop[] the rape charges," and not to cause emotional distress. *See Bennett*, 2003 UT 9, ¶ 68. Therefore, allegations that Mr. Ortler unintentionally caused emotional distress is equivalent to accidentally causing emotional distress.

Finally, as explained above, Mr. Ortler's alleged unintentional infliction of emotional distress is covered under insurance policies for an "occurrence" that results in "bodily injury." *See Benjamin*, 2006 UT 37, ¶ 17–30.

Accordingly, the plain language of the Insurance Policies cover the occurrence alleged in the Underlying Complaint that led to the Plaintiffs' bodily injuries, and to the extent there is any ambiguity in the terms, these terms must be construed in favor of Mr. Ortler as the insured.

**C.      State Auto Has A Duty to Indemnify Mr. Ortler.**

State Auto relies solely on its argument that it has no duty to defend Mr. Ortler to support its assertion that it has no duty to indemnify Mr. Ortler. ECF 43, at 14. As explained above, State Auto cannot show that it has no duty to defend Mr. Ortler. Further, the duty to indemnify arises only when the insured is "legally obligated to pay damages" because of bodily injury. Ex. B, SA_000008; Ex. C, SA_000031; Ex. D, SA_000054; *see also Benjamin*, 2006 UT 37, ¶ 29 ("Typically, an insured's legal liability for damages arises when judgment is entered against him."). State Auto has provided no other basis to determine that it has not duty to indemnify Mr. Ortler against any of the claims and therefore State Auto is not entitled to judgment on the pleadings.

Even if State Auto had argued an alternative basis, there is no judgment entered against Mr. Ortler with respect to *any* of Underlying Plaintiff's claims. Indeed, Underlying Plaintiff's just hired their third set of counsel to assist them in prosecuting the Underlying Claims. It is still entirely unclear whether Mr. Ortler—who has vehemently denied the allegations and actively participated in his own defense—will be liable for any of the claims raised against him. Even if Plaintiffs were to succeed on all of their claims against Mr. Ortler, State Auto would be obligated to indemnify Mr. Ortler against the damages awarded for a judgment entered on the unintentional infliction of emotional distress claim as that claim is covered by the Insurance Policies, and the Insurance Policies expressly state that State Auto will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' … to which this insurance applies." Ex. B, 2019 Policy, SA_000008; Ex. C, 2020 Policy, SA_000031; Ex. D, 2021 Policy, SA_000054.

Accordingly, because State Auto has failed to show that it has no duty to defend Mr. Ortler and because there has been no judgment entered against Mr. Ortler, State Auto has failed to show that it has no duty to indemnify Mr. Ortler.

<u>**CONCLUSION**</u>

For the foregoing reasons, State Auto has failed to establish that it has no duty to defend or indemnify Mr. Ortler in the Underlying Action. Mr. Ortler respectfully requests the Court deny State Auto's Motion for Judgment on the Pleadings and instead enter an order granting Mr. Ortler's Motion to Stay Pending Resolution of Underlying Proceedings, to permit the parties to resume this litigation if necessary and with a fully developed record following the resolution of the Underlying Action. ECF 50.

DATED December 6, 2024.

**MANNING CURTIS BRADSHAW**
**& BEDNAR PLLC**

MATTHEW D. CHURCH
KENDRA M. BROWN
*Attorneys for James Ortler*

**CERTIFICATE OF SERVICE**

I certify that on Friday, December 6, 2024, a copy of the foregoing was electronically

filed with the Clerk of the Court and served through E-Filing to the following parties:

Ellen M. Farrell
Jennifer YoonJee Kim
Nancy D. Adams
MINTZ LEVIN COHN FERNS
GLOVSKY AND POPEO PC
emfarrell@mintz.com
jkim@mintz.com
ndadams@mintz.com

Rebecca L. Hill
CHRISTENSEN & JENSEN PC
rebecca.hill@chrisjen.com
*Attorneys for Plaintiff*

J. Bryan Jackson
THE LAW OFFICE @456
bryan@lawoffice456.com
*Attorney for April Fischer, Millinda Johnson,*
*Aimee Johnson, and Sarah Barlow*

*/s/ Kimberly Tessen*